IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DORAL MONEY, INC., d/b/a                 3:14-CV-00545-BR
DORAL HEALTHCARE FINANCE, a
Delaware corporation,                    OPINION AND ORDER

            Plaintiff,

v.

HNC PROPERTIES, LLC, a
Minnesota limited liability
company,

            Defendant.


ANNA M. HELTON
DAVID ARDEN ANDERSON
Schwabe Williamson & Wyatt, PC
1211 S.W. Fifth Avenue, Ste. 1800
Portland, OR 97204
(503) 796-3763

            Attorneys for Plaintiff

LESLIE S. JOHNSON
CHRISTOPHER H. KENT
Kent & Johnson, LLP
1500 S.W. Taylor Street
Portland, OR 97205
(503) 220-0717


1 - OPINION AND ORDER

**TREVOR R. WALSTEN**
**DANIELLE K. NELLIS**
Walsten & Te Slaa, P.A.
7900 Xerxes Avenue South, Suite 2000
Bloomington, MN 55431
(952) 896-5100

      Attorneys for Defendant


**BROWN, Judge.**

      This matter comes before the Court on Plaintiff's Motion
(#15) to Dismiss Counterclaims and Plaintiff's Request (#21) for
Judicial Notice.  For the reasons that follow, the Court **GRANTS**
Plaintiff's Motion to Dismiss Counterclaims and **DENIES**
Plaintiff's Request for Judicial Notice.


<u>**BACKGROUND**</u>

      The following facts are taken from Plaintiff's Complaint and
Defendant's Answer:

      On April 30, 2012, Plaintiff Doral Money, Inc., entered into
a Loan and Security Agreement with Crystal Care Home Health
Services, Inc.; Crystal Care PCA, Inc.; and Premier Healthcare
Services, Inc. (referred to collectively as Borrowers).[1]  Under
the Loan and Security Agreement Plaintiff provided Borrowers with

---

      [1] Plaintiff alleges Defendant HNC Properties, LLC, owns a
majority interest in Borrowers and is also the landlord "for any
one or more of the entities that comprise Borrower[s].  As a
landlord, [Defendant] collects rent . . . on at least a monthly
basis."  Compl. at ¶ 3.

2 - OPINION AND ORDER

"certain credit facilities . . . in the amount of $2,500,000."
Compl. at ¶ 1; Answer at ¶ 59.  Pursuant to the Loan Plaintiff
agreed to extend to Borrowers a revolving line of credit up to
2,500,000

> provided, among other things, [that] Borrower[s
> were] in compliance with the terms of the Loan
> Agreement, including . . . maintaining a specified
> net worth as calculated in accordance with the
> Loan Agreement (the "Net Worth Covenant"), and
> maintaining [their] "borrowing base," as
> calculated in accordance with the Loan Agreement
> (the "Borrowing Base"), such that the aggregate
> outstanding principal balance under the Loan
> agreement [*sic*] would not exceed the Borrowing
> Base.

Answer at ¶ 59.

Also on April 30, 2012, Plaintiff, Defendant, and Borrowers
executed a Landlord Subordination Agreement in which Defendant
agreed, among other things, that if Borrowers defaulted on the
Loan Agreement, Defendant would "(a) subordinate [Defendant's]
right to payments from Borrower[s] to [Plaintiff's] right to
payments under the Loan Agreement; (b) hold in trust all payments
received from Borrower[s]; and (3) [*sic*] promptly pay to
[Plaintiff] any payments received from Borrower[s]."  Compl. at
¶ 6.

"During the term of the Loan agreement" Plaintiff hired
Breslin, Young and Slaughter, LLC (BY&S) to perform

> certain auditing and accounting services,
> including, but not limited to, asset based
> examination and accounting functions, auditing
> Borrower[s'] financial reports and statements,

3 - OPINION AND ORDER

> auditing Borrower[s'] assets, accounts receivable
> and equipment, advising Borrower[s] concerning
> financial, management and accounting issues to
> assist [Plaintiff] in making evaluations and
> decisions regarding the Loan Agreement, and
> providing other related services (collectively the
> "Debt/Equity Evaluation").

Answer at ¶ 61.

On May 2, 2013, Defendant entered into a Promissory Note (Loan 4A) with Borrowers to lend them the funds "necessary to cure monetary defaults in the Loan Agreement." Answer at ¶ 63. Defendant alleges in its Answer that it entered into the Promissory Note "in reliance on" the Debt/Equity Evaluation conducted by BY&S.

According to Plaintiff, Borrowers have been in breach of the Loan Agreement since August 2013 "for a multitude of reasons, including . . . failure to pay [Plaintiff] amounts owed when due." Compl. at ¶ 8. Plaintiff alleges Borrowers have made rent payments to Defendant "since August 2013." In its Answer, however, Defendant denies Borrowers made any rent payments to Defendant after February 2014.

On September 11, 2013, Defendant made a loan (Loan 5) to Borrowers in the amount of $30,000 "in reliance on [the] Debt/Equity Evaluation" to provide Borrowers with the funds "necessary to file for reorganization under the United States Bankruptcy Code." Answer at ¶ 64.

According to Defendant, Borrowers at some point allowed

Plaintiff to liquidate some of Borrowers' assets, including accounts receivable, "to maximize the return to [Plaintiff] on the assets that supported the Loan Agreement."  Answer at ¶ 81. "In the process of liquidating the purported accounts receivable, Plaintiff realized that the accounts receivable values had been over inflated."  Answer at ¶ 82.

"In August or September 2013" Plaintiff advised Defendant that Borrowers' accounts receivable "had been materially overstated for more than one year in the Borrowing Base certificates and financial statements."  Answer at ¶ 83.

On January 28, 2014, Plaintiff sent a letter to Defendant in which Plaintiff demanded under the terms of the Subordination Agreement that Defendant "forward to [Plaintiff] . . . amounts received from [Borrowers] for rent payments since August 2013 [as well as] . . . any rent payments received from [Borrowers] in the future until [Plaintiff] notifies [Defendant] that [Borrowers'] obligations to [Plaintiff] have been paid in full."  Compl., Ex. 2 at 2.

Defendant did not send Plaintiff the rent payments from Borrowers as Plaintiff demanded.

On March 3, 2014, Plaintiff filed a complaint in Multnomah County Circuit Court alleging claims against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and specific performance.  Defendant removed the matter

to this Court on April 2, 2014, on the basis of diversity jurisdiction.

On April 9, 2014, Defendant filed an Answer, Affirmative Defenses, and Counterclaims in which Defendant asserted 23 Affirmative Defenses and four Counterclaims against Plaintiff for breach of duty of care, negligent misrepresentation, fraudulent misrepresentation, and promissory estoppel.

On May 2, 2014, Plaintiff filed a Motion to Dismiss Counterclaims.

On June 5, 2014, Plaintiff filed a Request for Judicial Notice.

The Court took Plaintiff's Motion and Request under advisement on June 5, 2014.

## **PLAINTIFF'S MOTION (#15) TO DISMISS COUNTERCLAIMS**

Plaintiff moves to dismiss Defendant's Counterclaims on the grounds that (1) there is not any special relationship between Plaintiff and Defendant, (2) Defendant failed to plead the right to rely, and (3) promissory estoppel is an affirmative defense rather than a counterclaim.[2]

## I.    Standards

---

[2] Plaintiff also asserts in its Motion that Defendant's Counterclaims should be dismissed because Defendant fails to allege an agency relationship between BY&S and Plaintiff. Plaintiff, however, appears to abandon that ground in its Reply.

6 – OPINION AND ORDER

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.*
> *Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955. A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged. *Id.* at 556.
> . . . The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully. *Ibid.* Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'" *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *See also Bell*

*Atlantic*, 550 U.S. at 555-56. The court must accept as true the

allegations in the complaint and construe them in favor of the

plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure

8 "does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading

that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Id.* (citing

*Twombly*, 550 U.S. at 555). A complaint also does not suffice if

it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally

consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## II.  Oregon Law Applies

Defendant states in its Response that Plaintiff has not made a "showing that Oregon law applies to the tort claims." Resp. at 13.  Defendant asserts Plaintiff "also has failed to demonstrate there is no conflict among Minnesota and Oregon law" and "Minnesota precedent does not rely on, and *may be* distinct from, Oregon law."  Resp. at 14 (emphasis added).

"When a federal court sits in diversity to hear state law claims, the conflicts laws of the forum state - here [Oregon] — are used to determine which state's substantive law applies." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999)).  Under Oregon conflict-of-law rules, the Court must determine as a threshold issue whether there is a material difference between Oregon substantive law and the law of the other forum.  *CACV of Colorado, LLC v. Stevens*, 248 Or. App. 624,

641 (2012)(citation omitted).  "If there is a material difference, the Court must determine whether both states have substantial interests in having their laws applied." *United States ex rel. TBH & Assoc., LLC v. Wilson Const. Co.*, 965 F. Supp. 2d 1215, 1219 (D. Or. 2013)(citing *Pulido v. United States Parcel Serv. Gen. Servs. Co.*, 31 F. Supp. 2d 809, 813 (D. Or. 1998)).  Finally, if "both states have substantial interests, the Oregon Supreme Court has adopted the 'most significant relationship' approach of the Restatement (Second) Conflict of Laws." *Id.* (citation omitted).

"It is incumbent on the parties to identify material differences between the laws of Oregon and [Minnesota] that govern when determining whether a binding contract has been entered into by the parties." *Home Poker Unlimited, Inc. v. Cooper,* No. 09-CV-460-BR, 2009 WL 5066653, at *4 (D. Or. Dec. 15, 2009)(citing *Waller v. Auto-Owners Ins. Co.*, 174 Or. App. 471, 475 (2001)).  "'[I]t is not [the Court's] obligation to cast around the law of [Minnesota and Oregon] in quest of possible material differences.

Because [the parties] have not demonstrated any material distinctions between the Oregon and [Minnesota] substantive law" related to the torts asserted in Defendant's Counterclaims, the Court applies Oregon law. *Id.* (quoting *Angelini v. Delaney*, 156 Or. App. 293, 300-01 (1998)).

### III. Defendant's Counterclaims for Breach of a Heightened Duty of Care and Negligent Misrepresentation

Plaintiff asserts the Court should dismiss Defendant's First Counterclaim for breach of a heightened duty of care and Second Counterclaim for negligent misrepresentation because Defendant did not allege facts sufficient to show a special relationship existed between Plaintiff and Defendant that gave rise to such causes of action.

The Oregon Supreme Court has held claims for negligent misrepresentation and breach of a heightened duty of care "must be predicated on some duty of the negligent actor to the injured party *beyond* the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159 (1992)(emphasis added). "In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship,' in which the party sought to be held liable had some obligation to pursue the interests of the other party." *Conway v. Pac. Univ.*, 324 Or. 231, 237 (1996). *See also Abraham v. T. Henry Const., Inc.,* 350 Or. 29, 40 (2011)("[T]his court's case law [with respect to a breach of a heightened duty of care] is clear that economic losses . . . are recoverable in negligence only if the defendant is subject to a heightened standard of care, such as one arising out of a special relationship."). Courts in Oregon have concluded such special relationships may arise, for example, with

10 - OPINION AND ORDER

attorneys, physicians, principals in an agent relationship,
trustees, "pledgees," and liability insurers "who undertake[] a
duty to defend." *Id*. at 239-40.  In addition, an individual may
be in a special relationship with the engineers and architects
with whom they enter into a contract when the individual
"authorize[s] [the engineer or architect] to exercise independent
judgment in the [individual's] behalf and in the [individual's]
interests," and the individual has the right to rely on the
engineer or architect "to achieve a desired outcome or
resolution."  *Id*. at 239-40.

    Oregon courts, however, have made clear that a special
relationship does not exist in a business transaction in which
"adversarial parties negotiat[e] at arm's length to further their
own economic interests." *Onita*, 315 Or. at 161.  Accordingly,
the *Onita* court concluded:  "[I]n arm's-length negotiations,
economic losses arising from a negligent misrepresentation are
not actionable." *Id*.

    Here Defendant alleges in its Counterclaims for breach of a
heightened duty of care and negligent misrepresentation that
Plaintiff

> failed to comply with a heightened duty of care,
> including the duty to exercise independent
> judgment on [Defendant's] behalf and in
> [Defendant's] interests by, among other things:
>
>     a. failing to use reasonable care to properly
> compute and represent Borrower[s'] accounts
> receivable values and to conduct an audit in

conformance with GAAS as of the year ended
December 31, 2011 and thereafter;

    b. failing to obtain sufficient relevant data
regarding the nature and the value of accounts
receivable as reported in Borrower[s'] financial
statements and Borrowing Base certificates;

    c. failing to conduct its audit of
Borrower[s'] financial statements in conformance
with GAAS;

    d. failing to take action to timely disclose
the overstatement of accounts receivable value;

    e. directing or permitting misleading entries
in Borrower[s'] accounting records and, thereby.
[*sic*] in its financial statements;

    f. concealing the material accounts
receivable value overstatements and/or the extent
of the overstatements in 2013 after obtaining
actual or constructive knowledge of the
overstatements;

    g. failing to notify [Defendant] of the
material overstatements of accounts receivable
value and earnings in a timely manner; and

    h. continuing to provide incorrect and
misleading information to [Defendant] during 2012
and 2013.

Answer at ¶ 90.

    Defendant, however, does not allege facts that establish
Plaintiff and Defendant had the kind of special relationship that
Oregon courts have determined may give rise to a claim for breach
of heightened duty or negligent misrepresentation.  In fact, both
the Complaint and the Answer reflect Defendant entered into
arm's-length business transactions:  the Landlord Subordination
Agreement between Plaintiff, Defendant, and Borrowers and Loans

12 - OPINION AND ORDER

4A and 5 between Defendant and Borrowers.  The Complaint and Answer reflect Plaintiff as Borrowers' lender and Defendant as Borrowers' landlord had competing claims to Borrowers' funds. Accordingly, the Lease Subordination Agreement was an ordinary financial transaction in which Defendant and Plaintiff were "adversarial parties" who bore the burden of protecting their own financial interests rather than a transaction in which Plaintiff had any obligation to pursue or to protect the financial interests of Defendant.

In addition, although Defendant asserts in its Answer and in its Response that it relied on the financial evaluations conducted by BY&S when it entered into Loans 4A and 5, there is not any indication that Defendant could not have and should not have conducted its own due diligence before entering into Loans 4A and 5.  Even if Defendant elected to relinquish its due-diligence responsibilities to Plaintiff and relied solely on the reports of BY&S before entering into Loans 4A and 5, Oregon courts have made clear that one party's decision to relinquish financial control to another party is insufficient to establish a special relationship when the parties' relationship is not the type that "by its nature allows one party to exercise judgment on the other party's behalf."  *Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 161 (2001).  As the court explained in *Bennett*:

> The focus is not on the subject matter of the
> relationship, such as one party's financial

13 - OPINION AND ORDER

> future; nor is it on whether one party, in fact,
> relinquished control to the other.  The focus
> instead is on whether *the nature of the parties'*
> *relationship itself* allowed one party to exercise
> control in the first party's best interests.  In
> other words, the law does not imply a tort duty
> simply because one party to a business
> relationship begins to dominate and to control the
> other party's financial future.  Rather, the law
> implies a tort duty only when that relationship is
> of the type that, by its nature, allows one party
> to exercise judgment on the other party's behalf.

*Id*. at 161-62 (emphasis in original).  Here the relationship

between Plaintiff and Defendant is not akin to the special

relationships that Oregon courts have concluded may give rise to

claims for negligent misrepresentation or breach of a heightened

duty of care such as relationships involving attorneys,

physicians, principals in an agent relationship, or trustees.  In

fact, Plaintiff and Defendant were "adversarial parties" who

"negotiat[ed] [transactions] at arm's length to further their own

economic interests."  *Onita*, 315 Or. at 161.

    In addition, to the extent that Defendant asserts Plaintiff

is liable for negligent misrepresentation or breach of a

heightened duty because Plaintiff was a "nongratuitous supplier

of information" and, therefore, owed Defendant a duty to avoid

making negligent misrepresentations related to Borrowers'

financial status, the Court finds such an assertion to be

unpersuasive.  In *Onita* the Oregon Supreme Court noted some legal

scholars "distinguish[] between misrepresentations made by an

adversary in a sales transaction and by one who holds out to the

14 - OPINION AND ORDER

general public that he or she supplies information."  The court
suggested the latter may have a duty to avoid making negligent
misrepresentations.  315 Or. at 162.  In *Conway*, however, the
court explained a nongratuitous supplier of information who may
have a duty to avoid making negligent misrepresentations "is
someone in the business of supplying information for a fee."  324
Or. at 243.  Although BY&S may be in the business of supplying
information for a fee, BY&S was hired by Plaintiff to evaluate
Borrowers' financial condition.  At best, BY&S owed Plaintiff a
duty to avoid making negligent misrepresentations as to
Borrowers' financial status.  As noted, however, Defendant had a
duty to conduct its own due diligence regarding Borrowers'
financial status before entering into Loans 4A and 5 and before
entering into the Lease Subordination Agreement.  Defendant may
have chosen to relinquish its duty to Plaintiff by relying on
BY&S's statements of Borrowers' financial viability, but, as
noted, Defendant's choice to relinquish its duty does not give
rise to a claim for negligent misrepresentation or breach of
heightened duty.

　　　　Accordingly, the Court grants Plaintiff's Motion to Dismiss
Defendant's Counterclaims for breach of duty of care and
negligent misrepresentation.

## IV.  Defendant's Counterclaim for Fraud

　　　　Plaintiff moves to dismiss Defendant's Counterclaim for

15 - OPINION AND ORDER

fraud on the ground that Defendant fails to plead the right-to-rely element of fraud.

## A.    Pleading Standard

Federal Rule of Civil Procedure 8(a) provides:  A pleading that sets forth a claim must contain "a short and plain statement of the claim showing the pleader is entitled to relief."  "Rule 8's liberal notice pleading standard . . . requires that the allegations" provide the opposing party with "fair notice of what the . . . claim is and the grounds upon which it rests." *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992, at *1 (9th Cir. Feb. 14, 2011).

With respect to allegations of fraud, however, Federal Rule of Civil Procedure 9(b) requires all allegations of fraud to be stated "with particularity."  In order to satisfy the additional burdens imposed by Rule 9(b), the party must allege, at a minimum, "the time, place and nature of the alleged fraudulent activities." *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008)(citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give [the opposing party] notice of the particular misconduct . . . so that [it] can defend against the charge and not just deny that [it has] done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)(quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir.

2001)).  "Averments of fraud must be accompanied by 'the who,
what, when, where, and how' of the misconduct charged."  *Id*.
(quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th
Cir. 2003)).  "A party alleging fraud must set forth more than
the neutral facts necessary to identify the transaction."  *Id*.
(quotation omitted).

### B.  Fraud Standard

To state a claim for fraud under Oregon common law a
party must allege:

> "(1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its
> falsity or ignorance of its truth; (5) his intent
> that it should be acted on by the person and in
> the manner reasonably contemplated; (6) the
> hearer's ignorance of its falsity; (7) his
> reliance on its truth; (8) his right to rely
> thereon; and (9) his consequent and proximate
> injury."

*Burgdorf v. Weston*, 259 Or. App. 755, 771 (2013)(quoting *Webb v.
Clark*, 274 Or. 387, 391 (1976)).

### C.  Analysis

In its fraud Counterclaim Defendant incorporates by
reference the allegations contained in its Counterclaims for
breach of duty of care and negligent misrepresentation.
Defendant asserts:  "In the alternative, [Plaintiff] knowingly
and/or recklessly made the material misrepresentations and
omissions referenced in the preceding count [of negligent
misrepresentation]."  Answer at ¶ 99.  Specifically, Defendant

17 - OPINION AND ORDER

alleges Plaintiff (acting through BY&S) knowingly or recklessly misrepresented Borrowers' financial state causing Defendant to enter into the Lease Subordination Agreement with Defendant and Borrowers and into Loans 4A and 5 with Borrowers.

As noted, Plaintiff moves to dismiss Defendant's Counterclaim for fraud on the ground that Defendant fails to allege facts sufficient to establish it had a right to rely on Plaintiff's alleged misrepresentations. *See Vasquez-Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 580 (2007)("Under Oregon law, a party asserting fraud must prove by clear and convincing evidence not only that it relied on the other party's misrepresentation, but that the reliance was reasonable under the circumstances."). In particular, Plaintiff asserts a sophisticated business such as Defendant cannot "stick its head in the sand," fail to conduct due diligence before entering into an arm's-length business transaction, and then bring a claim for fraud against the other party to the transaction for allegedly misrepresenting facts that the sophisticated business could and should have discovered on its own.

For example, in *Vasquez-Lopez* the Oregon Court of Appeals held the trial court did not err when it granted the plaintiff's motion for a directed verdict on the defendant's affirmative defense of fraud on the ground that "no reasonable juror could find by clear and convincing evidence that

18 - OPINION AND ORDER

defendant's reliance was reasonable." *Id*. at 581.  The Oregon

Court of Appeals further noted

> defendant presented no evidence that it had a
> right to rely on plaintiffs' allegedly false [tax]
> returns.  Under Oregon law, a party asserting
> fraud must prove by clear and convincing evidence
> not only that it relied on the other party's
> misrepresentation, but that the reliance was
> reasonable under the circumstances. *OPERB*, 191 Or.
> App. at 428, 83 P.3d 350.  One of the
> circumstances to be taken into consideration is
> the sophistication of the party asserting fraud.
>
>> "[I]f a party is a large and sophisticated
>> organization that has at its disposal a small
>> army of attorneys, accountants and hired
>> experts to evaluate a business deal, that
>> party . . . probably 'ha[s] or can obtain
>> equal means of information and [is] equally
>> qualified to judge' the merits of a business
>> proposition, thus making reliance on
>> misstatements by another party unjustified.
>> *Coy [v. Starling*, 53 Or.App. 76, 81–82, 630
>> P.2d 1323, *rev. den.*, 291 Or. 662, 639 P.2d
>> 1280 (1981)]."
>
> *OPERB*, 191 Or. App. at 428, 83 P.3d 350.  Here,
> the evidence demonstrates that defendant is a
> sophisticated organization that employs
> underwriters whose job includes reviewing loan
> applications for misrepresentation.
>
>                    * * *
>
> The trial court [concluded:]
>
>                    * * *
>
>> "[I]t is clear that [defendant] had
>> sufficient resources at its disposal to
>> detect any existing liabilities plaintiffs
>> had not disclosed either in their loan
>> application or in their conversations with

[defendant's] representative.

* * *

We agree.

*Id.* at 580-81.  Here there is not any allegation in Plaintiff's
Complaint or Defendant's Answer that Defendant is anything other
than a sophisticated organization that had the ability and acumen
to reasonably evaluate Borrowers' finances before entering into
the Lease Subordination Agreement in which it agreed to subrogate
rental payments that Borrowers owed to Plaintiff or before
loaning a significant amount of funds to Borrowers nor have the
parties alleged any facts from which the Court can infer such a
lack of sophistication.

        Defendant, nevertheless, asserts in its Response that
its Answer included allegations that it reasonably relied on
Plaintiff's Debt/Equity Evaluation of Borrowers when it entered
into the Lease Subordination Agreement and Loans 4A and 5 with
Borrowers, and, therefore, the Court could reasonably infer
Defendant "did not have access to Borrower[s'] books and records,
accounts receivable, audit reports, and other documents."  Resp.
at 12.

        The Court disagrees.  Defendant's allegation that it
reasonably relied on Plaintiff's Debt/Equity Evaluation of
Borrowers is a legal conclusion unsupported by any factual
allegations.  Moreover, Plaintiff alleges in its Complaint, and

Defendant does not deny, that Defendant was Borrowers' landlord,
and, therefore, the Court could infer it is equally possible that
Defendant could have had access to Borrowers' financial
information.  Even if Defendant did not actually have access to
Borrowers' financial information, neither the Complaint nor the
Answer contain any factual basis to suggest that Defendant could
not have demanded access to Borrowers' pertinent financial
information from Borrowers before entering into the Lease
Subordination Agreement and/or Loans 4A and 5 in order to conduct
a proper due-diligence analysis.  Thus, the parties' allegations
in the Complaint and/or the Answer do not give rise to any
inference as to Defendant's ability to access Borrowers'
financial records.

     In summary, the pleadings reflect Plaintiff and
Defendant were businesses engaged in an arm's-length
relationship, and, in turn, Defendant had a duty to conduct its
own due diligence before entering into the Loan Subordination
Agreement and Loans 4A and 5, and Defendant has not alleged facts
from which the Court can conclude Defendant has sufficiently pled
the right to rely on Plaintiff's statements.  Accordingly, the
Court grants Plaintiff's Motion to Dismiss Defendant's
Counterclaim for fraud.

## IV.  Defendant's Counterclaim for Promissory Estoppel

     Plaintiff moves to dismiss Defendant's Counterclaim for

promissory estoppel on the ground that it is more properly brought as an affirmative defense.  Plaintiff notes in its Reply that it does not oppose Defendant asserting promissory estoppel as an affirmative defense.

Accordingly, the Court grants Plaintiff's Motion to Dismiss Defendant's Counterclaim for promissory estoppel with leave for Defendant to amend its Answer to assert promissory estoppel as an affirmative defense.

**V.    Amendment of Defendant's Answer and Counterclaims**

Plaintiff asserts in its Reply that Defendant should not be allowed to amend its Answer to replead its Counterclaims for breach of duty of care, negligent misrepresentation, and fraud because "the type of relationship [Defendant and Plaintiff] share is not special and no pleading can change that."  Reply at 14. The Court, however, cannot conclude with certainty that there is not any set of facts that Defendant could plead to support its Counterclaims for breach of duty of care, negligent misrepresen- tation, or fraud.

On this record, therefore, the Court grants Defendant leave to amend its Answer and to replead those Counterclaims to the extent that Defendant can cure the deficiencies set out in this Opinion and Order.

**<u>PLAINTIFF'S REQUEST (#21) FOR JUDICIAL NOTICE</u>**

Plaintiff requests the Court take judicial notice of (1) the transcript of selected testimony made in an evidentiary hearing held on January 21, 2014, in consolidated cases before the United States Bankruptcy Court for the District of Minnesota (*In re Premier Healthcare Services, Inc.; In re Crystal Care Home Health Services, Inc., In re Crystal Care Support Services, Inc.; and In re Crystal Care PICA, Inc.*; Case Nos. 13-44501, 13-44503, 13-44505, and 13-44506 respectively) and (2) Proof of Claim filed by HNC Properties, LLC, in the case of *In re Premier Healthcare Services, Inc.*, D. Minn. Bankr. Case No. 13-44501.  Defendant objects to Plaintiff's request.

When deciding Plaintiff's Motion to Dismiss, the Court did not rely on the documents nor the contents of the documents submitted by Plaintiff with its Request.

Accordingly, the Court denies as moot Plaintiff's Request for Judicial Notice.


**<u>CONCLUSION</u>**

For these reasons, the Court **GRANTS** Plaintiff's Motion (#15) to Dismiss Counterclaims and **DENIES as moot** Plaintiff's Request (#21) for Judicial Notice.

The Court, however, **GRANTS** Defendant leave to amend its Answer **no later than August 13, 2014**, to cure the deficiencies

23 - OPINION AND ORDER

set out in this Opinion and Order.

IT IS SO ORDERED.

DATED this 9th day of July, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


24 - OPINION AND ORDER