IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DORAL MONEY, INC., d/b/a                    3:14-CV-00545-BR
DORAL HEALTHCARE FINANCE, a
Delaware corporation,                       OPINION AND ORDER

          Plaintiff,

v.

HNC PROPERTIES, LLC, a
Minnesota limited liability
company,

          Defendant.


ANNA M. HELTON
DAVID ARDEN ANDERSON
Schwabe Williamson & Wyatt, PC
1211 S.W. Fifth Avenue, Ste. 1800
Portland, OR 97204
(503) 796-3763

          Attorneys for Plaintiff

LESLIE S. JOHNSON
CHRISTOPHER H. KENT
Kent & Johnson, LLP
1500 S.W. Taylor Street
Portland, OR 97205
(503) 220-0717


1 - OPINION AND ORDER

**TREVOR R. WALSTEN**
**DANIELLE K. NELLIS**
Walsten & Te Slaa, P.A.
7900 Xerxes Avenue South, Suite 2000
Bloomington, MN 55431
(952) 896-5100

      Attorneys for Defendants

**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Doral Money, Inc.'s Motion (#40) to Dismiss HNC Properties, LLC's Amended Counterclaims.  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.

<u>BACKGROUND</u>

    On June 1, 2008, Defendant HNC Properties, Inc., LLC and/or its three members, Ken Clark, Bruce Hinks, and Phillip Nelson,[1] entered into a Loan and Security Agreement (Loan 1) with Crystal Care Home Health Services, Inc.; Crystal Care PCA, Inc.; and Premier Healthcare Services, Inc. (referred to collectively as Borrowers)[2] in which Defendant provided $750,000 to Borrowers.

_____

    [1] Clark, Hinks, and Nelson are not named as defendants in this matter.

    [2] Plaintiff alleges Defendant HNC Properties, LLC, owns a majority interest in Borrowers and is also the landlord "for any one or more of the entities that comprise Borrower[s].  As a landlord, [Defendant] collects rent . . . on at least a monthly basis."  Compl. at ¶ 3.  Defendant admits in its Amended Answer that it has acted as the landlord for Borrowers "at certain times" and has collected rent from Borrowers.  Am. Answer at ¶ 3.

2 - OPINION AND ORDER

On October 28, 2009, Defendant entered into a Loan and Security Agreement (Loan 2) with Borrowers under which the Defendant provided $350,000 to Borrowers.

On June 23, 2010, Defendant entered into a Loan and Security Agreement (Loan 3) with Borrowers under which Defendant provided $225,000 to Borrowers.

On April 30, 2012, Plaintiff entered into a Loan and Security Agreement with Borrowers.  Under the Loan and Security Agreement Plaintiff provided Borrowers with "certain credit facilities . . . in the amount of $2,500,000."  Compl. at ¶ 1; Am. Answer at ¶ 63.  Pursuant to the Loan Plaintiff agreed to extend to Borrowers a revolving line of credit up to 2,500,000

> provided, among other things, [that] Borrower[s were] in compliance with the terms of the Loan Agreement, including . . . maintaining a specified net worth as calculated in accordance with the Loan Agreement (the "Net Worth Covenant"), and maintaining [their] "borrowing base," as calculated in accordance with the Loan Agreement (the "Borrowing Base"), such that the aggregate outstanding principal balance under the Loan agreement [*sic*] would not exceed the Borrowing Base.

Am. Answer at ¶ 63.

Also on April 30, 2012, Plaintiff, Defendant, and Borrowers executed a Landlord Subordination Agreement in which Defendant agreed, among other things, that if Borrowers defaulted on the Loan Agreement, Defendant would "(a) subordinate [Defendant's] right to payments from Borrower[s] to [Plaintiff's] right to

3 – OPINION AND ORDER

payments under the Loan Agreement; (b) hold in trust all payments received from Borrower[s]; and (3) [*sic*] promptly pay to [Plaintiff] any payments received from Borrower[s]."  Compl. at ¶ 6.

"During the term of the Loan [A]greement" Plaintiff hired Breslin, Young and Slaughter, LLC (BY&S) to perform

> certain auditing and accounting services, including, but not limited to, asset based examination and accounting functions, auditing Borrower[s'] financial reports and statements, auditing Borrower[s'] assets, accounts receivable and equipment, advising Borrower[s] concerning financial, management and accounting issues to assist [Plaintiff] in making evaluations and decisions regarding the Loan Agreement, and providing other related services (collectively the "Debt/Equity Evaluation").

Am. Answer at ¶ 65.

At some point before November 7, 2012, Borrowers defaulted on Loans 1, 2, and 3.

On or about November 7, 2012, Borrowers proposed to Defendant a repayment schedule and business turn-around plan to cure the nonpayment defaults then existing under Loans 1, 2, and 3.  Evidently Defendant did not accept this plan because Defendant alleges in its Amended Answer that Defendant provided Borrowers with a Confession of Judgment and Forbearance Agreement on December 21, 2013, which Borrowers rejected.

On January 13, 2013, Borrowers provided a revised recovery plan to Defendant.

4 - OPINION AND ORDER

On or about January 30, 2013, Borrowers disclosed their Profit and Loss Statement to Defendant for the period January 15 to January 30, 2013.

On April 5, 2013, Borrowers emailed Defendant and advised Defendant of various financial obligations of Borrowers; specifically, money owed by Borrowers to the Internal Revenue Service (IRS) to be paid in order to prevent the IRS from filing a lien and funds owed to Borrowers' outside Certified Public Accountant (CPA).

On April 18, 2013, Plaintiff advised Defendant that it was Plaintiff's position that Borrowers must take immediate action to avoid an IRS lien and that Plaintiff "would have little option but to stop funding" if the IRS did effect a lien.

On April 19, 2013, Defendant emailed Borrowers' accounting personnel and advised it was having "a hard time following [Borrowers'] P and L [Profit and Loss Statement]."  In their reply Borrowers offered to allow Defendant to review any financial information it found necessary.

On May 2, 2013, Plaintiff emailed Defendant and advised:

> In order to provide [Defendant] and principals additional security as a result of their additional contribution to [Borrowers] for delinquent IRS 641 tax payments, [Plaintiff] has agreed to allow [Defendant] to file a 2nd lien position behind [Plaintiff].  [Plaintiff's] attorneys are preparing a waiver to the [April 30, 2012, Loan Agreement] and will be forwarding it to [Borrowers] and [Defendant] for review.

Am. Answer at ¶ 89.

On May 2, 2013, Defendant entered into a Promissory Note (Loan 4A) with Borrowers to lend them the funds "necessary to cure monetary defaults in the Loan Agreement." Am. Answer at ¶ 107. Defendant alleges in its Amended Answer that it entered into the Promissory Note "in reliance on" the Debt/Equity Evaluation conducted by BY&S on behalf of Plaintiff.

On May 8, 2013, Defendant advised Plaintiff that it was "having an outside accountant come into [Borrowers' office] to aid in the understanding of the borrowing base." Am. Answer at ¶ 92. Defendant also advised Plaintiff that

> a. Borrowers' CPA and Borrowers' successor accounting personnel were not able to express an accurate and reliable opinion on the accounts receivable valuation;
>
> b. Defendant could not do its own due diligence because Borrowers' books and records did not express an accurate and reliable opinion on the accounts receivable valuation; and
>
> c. Defendant could not do its own due diligence to evaluate Borrowers' financial strength.

Am. Answer at ¶ 92.

On May 9, 2013, Plaintiff responded and suggested "the best thing [Borrowers] could do would be to hire a controller/CFO to run billing, collections and financials." Am. Answer at ¶ 94.

On May 20, 2013, Defendant advised Plaintiff that

> a. [Defendant's] outside CPA was not able to

6 - OPINION AND ORDER

express an accurate and reliable opinion on the
accounts receivable valuation;

b. [Defendant's] outside CPA could not do his own
due diligence because Borrowers' books and records
did not express an accurate and reliable opinion
on the accounts receivable valuation; and

c. [Defendant's] outside CPA could not do his own
due diligence to evaluate Borrowers' financial
strength.

Am. Answer at ¶ 95.

On June 26, 2013, Plaintiff, Defendant, and Borrowers
entered into a consent and waiver document that allowed Defendant
to file a second lien behind Plaintiff on Borrowers' debt.
Defendant alleges it was "coerced or forced into executing
[Plaintiff's] consent and waiver document as a result of
[Plaintiff's] threats to stop advancing money to Borrower[s]."
Am. Answer at ¶ 105.

According to Plaintiff, Borrowers have been in breach of the
Loan Agreement since August 2013 "for a multitude of reasons,
including . . . failure to pay [Plaintiff] amounts owed when
due." Compl. at ¶ 8. Plaintiff alleges Borrowers, nevertheless,
have made rent payments to Defendant "since August 2013." In its
Answer, however, Defendant denies Borrowers made any rent
payments to Defendant after February 2014.

On September 11, 2013, Defendant made a loan (Loan 5) to
Borrowers in the amount of $30,000 to allow Borrowers to file for
reorganization under the United States Bankruptcy Code "in

reliance on [the] Debt/Equity Evaluation" conducted by BY&S.  Am. Answer at ¶ 108.

"In August or September 2013" Plaintiff advised Defendant that Borrowers' accounts receivable "had been materially overstated for more than one year in the Borrowing Base certificates and financial statements."  Am. Answer at ¶ 29.

On January 28, 2014, Plaintiff sent a letter to Defendant in which Plaintiff demanded that Defendant, pursuant to the terms of the Subordination Agreement, "forward to [Plaintiff] . . . amounts received from [Borrowers] for rent payments since August 2013 [as well as] . . . any rent payments received from [Borrowers] in the future until [Plaintiff] notifies [Defendant] that [Borrowers'] obligations to [Plaintiff] have been paid in full."  Compl., Ex. 2 at 2.

Defendant did not send Plaintiff the rent payments from Borrowers as Plaintiff demanded.

On March 3, 2014, Plaintiff filed a complaint in Multnomah County Circuit Court alleging claims against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and specific performance.  Defendant removed the matter to this Court on April 2, 2014, on the basis of diversity jurisdiction.

On April 9, 2014, Defendant filed an Answer, Affirmative Defenses, and Counterclaims in which Defendant asserted 23

Affirmative Defenses and four Counterclaims against Plaintiff for breach of duty of care, negligent misrepresentation, fraudulent misrepresentation, and promissory estoppel.  In response Plaintiff filed a Motion to Dismiss Defendant's Counterclaims.

On July 10, 2014, the Court issued an Opinion and Order in which it granted Plaintiff's Motion to Dismiss Defendant's Counterclaim for breach of a heightened duty of care and Counterclaim for negligent misrepresentation because Defendant did not allege facts sufficient to show a special relationship existed between Plaintiff and Defendant that gave rise to such causes of action.  The Court also granted Plaintiff's Motion to Dismiss Defendant's Counterclaim for fraud on the ground that Defendant failed to plead the right-to-rely element of fraud with the specificity required by Federal Rule of Civil Procedure 9(b). Finally, the Court granted Plaintiff's Motion to Dismiss Defendant's Counterclaim for promissory estoppel on the ground that it is more properly brought as an affirmative defense.  The Court granted Defendant's leave to file an Amended Answer to cure the defects set out in its Opinion and Order.

On August 13, 2014, Defendant filed an Amended Answer, Affirmative Defenses, and Counterclaims in which Defendant asserted 24 Affirmative Defenses and three Amended Counterclaims for breach of duty of care, negligent misrepresentation, and fraudulent misrepresentation.

On October 20, 2014, Plaintiff filed a Motion to Dismiss
Defendant's Amended Counterclaims.  Although the Court previously
set oral argument for November 20, 2014, the Court is now
satisfied oral argument is not necessary.  For the reasons that
follow, the Court **GRANTS** Plaintiff's Motion.


## STANDARDS

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.*
> *Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.  A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged. *Id.* at 556.
> . . .  The plausibility standard is not akin to a
> "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully.  *Ibid*.  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'"  *Id*. at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  *See also Bell*
*Atlantic*, 550 U.S. at 555-56.  The court must accept as true the
allegations in the complaint and construe them in favor of the
plaintiff.  *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure
8 "does not require 'detailed factual allegations,' but it
demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)(citation omitted). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).


## DISCUSSION

Plaintiff moves to dismiss Defendant's Amended Counterclaims on the grounds that (1) there is not any special relationship between Plaintiff and Defendant and (2) Defendant failed to plead sufficiently the right to rely.

I.  **Defendant's Amended Counterclaims for Breach of a Heightened Duty of Care and Negligent Misrepresentation**

Plaintiff asserts the Court should dismiss Defendant's first Amended Counterclaim for breach of a heightened duty of care and second Amended Counterclaim for negligent misrepresentation because Defendant still fails to allege facts sufficient to show a special relationship existed between Plaintiff and Defendant that gave rise to such causes of action.

Specifically, Plaintiff notes although Defendant has included several new allegations relating to Defendant's alleged inability to conduct its own due diligence, both the Complaint and the Amended Answer reflect Plaintiff and Defendant entered into arm's-length business transactions:  the Landlord Subordination Agreement between Plaintiff, Defendant, and Borrowers and Loans 4A and 5 between Defendant and Borrowers. The Complaint and Amended Answer continue to show Plaintiff (as Borrowers' lender) and Defendant (as Borrowers' landlord) had competing claims to Borrowers' funds.  Accordingly, Plaintiff asserts the Lease Subordination Agreement was an ordinary financial transaction in which Defendant and Plaintiff were "adversarial parties" who bore the burden of protecting their own financial interests rather than a transaction in which Plaintiff had any obligation to pursue or to protect the financial interests of Defendant.  The Court agrees.

As the Court noted in its July 9, 2014, Opinion and Order,

12 - OPINION AND ORDER

the Oregon Supreme Court held in *Bennett v. Farmers Ins. Co. of Oregon* that Oregon law does not impose any tort duty "simply because one party begins to dominate and control the other party's financial future" or because one party "relinquished control to the other." 332 Or. 138, 161 (2001). The Oregon Supreme Court explained:

> The focus is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether *the nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relation- ship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf.

*Id*. at 161-62 (emphasis in original). Thus, Defendant's additional factual allegations in its Amended Answer do not change the nature of the parties' relationship. They were entities engaged in an arm's-length transaction with competing claims to Borrowers' funds. Their relationship, therefore, was not akin to the special relationships that Oregon courts have concluded may give rise to claims for negligent misrepresentation or breach of a heightened duty of care such as relationships involving attorneys, physicians, principals in an agent relationship, or trustees. In fact, Plaintiff and Defendant were "adversarial parties" who "negotiat[ed] [transactions] at arm's

13 - OPINION AND ORDER

length to further their own economic interests." *Onita*, 315 Or. at 161.

Although Defendant relies on a number of cases involving claims against attorneys for negligent estate planning to support its assertion that it has viable Counterclaims for breach of duty of care and negligent misrepresentation against Plaintiff, the Court notes Oregon courts in those cases have concluded a *promisor* (*i.e.*, the estate attorney) may owe "a duty not only to the promisee [the decedent] but also to the intended beneficiary." *Frakes v. Nay*, 254 Or. App. 236, 265 (2012)(citing *Hale v. Groce*, 304 Or. 281, 286 (1987)). *See also Caba v. Barker*, 341 Or 534 (2006). Cases such as these, however, are distinguishable from the case before this Court. Each of the cases cited by Defendant involves claims brought by third-party beneficiaries against the attorney (the promisor) for failing to effectuate the decedent's testamentary intent. Here the promisor under Defendant's third-party beneficiary theory is BY&S rather than Plaintiff and, as the Court has noted, BY&S is not a party to this action.

Accordingly, the Court grants Plaintiff's Motion to Dismiss Defendant's Amended Counterclaims for breach of duty of care and negligent misrepresentation.

## II. Defendant's Amended Counterclaim for Fraud

Plaintiff moves to dismiss Defendant's Amended Counterclaim

14 - OPINION AND ORDER

for fraud on the ground that Defendant fails to plead the right-
to-rely element of fraud.

   **A.   Pleading Standard**

        Federal Rule of Civil Procedure 8(a) provides:   A
pleading that sets forth a claim must contain "a short and plain
statement of the claim showing the pleader is entitled to
relief."   "Rule 8's liberal notice pleading standard . . .
requires that the allegations" provide the opposing party with
"fair notice of what the . . . claim is and the grounds upon
which it rests."   *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL
490992, at *1 (9th Cir. Feb. 14, 2011).

        With respect to allegations of fraud, however, Federal
Rule of Civil Procedure 9(b) requires all allegations of fraud to
be stated "with particularity."   In order to satisfy the
additional burdens imposed by Rule 9(b), the party must allege at
a minimum "the time, place and nature of the alleged fraudulent
activities."   *Tok Cha Kim v. CB Richard Ellis Haw., Inc.*, 288 F.
App'x 312, 315 (9th Cir. 2008)(citation omitted).   "Rule 9(b)
demands that the circumstances constituting the alleged fraud 'be
specific enough to give [the opposing party] notice of the
particular misconduct . . . so that [it] can defend against the
charge and not just deny that [it has] done anything wrong.'"
*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.
2009)(quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir.

2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id*. (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id*. (quotation omitted).

## B.   Fraud Standard

To state a claim for fraud under Oregon common law a party must allege:

> "(1) a representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of its
> falsity or ignorance of its truth; (5) his intent
> that it should be acted on by the person and in
> the manner reasonably contemplated; (6) the
> hearer's ignorance of its falsity; (7) his
> reliance on its truth; (8) his right to rely
> thereon; and (9) his consequent and proximate
> injury."

*Burgdorf v. Weston*, 259 Or. App. 755, 771 (2013)(quoting *Webb v. Clark*, 274 Or. 387, 391 (1976)).

## C.   Analysis

In its Amended Counterclaim for fraud Defendant incorporates by reference the allegations contained in its Amended Counterclaims for breach of duty of care and negligent misrepresentation. Defendant asserts: "In the alternative, [Plaintiff] knowingly and/or recklessly made the material misrepresentations and omissions referenced in the preceding count [of negligent misrepresentation]." Am. Answer at ¶ 148.

16 - OPINION AND ORDER

Specifically, Defendant alleges Plaintiff (acting through BY&S) knowingly or recklessly misrepresented Borrowers' financial state thereby causing Defendant to enter into the Lease Subordination Agreement with Borrowers and into Loans 4A and 5 with Borrowers.

As noted, Plaintiff moves to dismiss Defendant's Amended Counterclaim for fraud on the ground that Defendant fails to plead the right-to-rely element of fraud with the required specificity. *See Vasquez- Lopez v. Beneficial Or., Inc.*, 210 Or. App. 553, 580 (2007)("Under Oregon law, a party asserting fraud must prove by clear and convincing evidence not only that it relied on the other party's misrepresentation, but that the reliance was reasonable under the circumstances.").

Defendant contends it was unable to understand Borrowers' financial strength before it entered into Loans 4A and 5, and, therefore, it had to rely on what Plaintiff and/or BY&S said about Borrowers' financial condition.  As this Court noted in its July 9, 2014, Opinion and Order, however, a business such as Defendant cannot fail to conduct due diligence before entering into an arm's-length business transaction and then bring a claim for fraud against the other party to the transaction for allegedly misrepresenting facts that the sophisticated business could and should have discovered on its own.

The allegations in Defendant's Amended Answer establish before Defendant entered into Loans 4A and 5:

17 - OPINION AND ORDER

Defendant was Borrowers' lender and landlord.  Am. Answer at ¶¶ 4, 71.

Defendant had access to Borrowers' financial records.  Am. Answer at ¶¶ 87, 92, 107.

Defendant hired an accountant to help it analyze Borrowers' financial status.  Am. Answer at ¶¶ 92, 107.

At least one of Defendant's members was on Borrowers' Board of Directors.  Am. Answer at ¶ 75(a).

At least one of Defendant's members was given full access to Borrowers' financial information.  Am. Answer at ¶ 87.

Defendant knew Borrowers had defaulted on the Loan and Security Agreement with Plaintiff and that Borrowers were having financial difficulty.  Am. Answer at ¶¶ 50, 107, 108.

Defendant, therefore, had access to Borrowers' financial records, had the services of a professional accountant to analyze them, knew Borrowers were in financial trouble, and at least knew or should have known it did not have a sufficient understanding of Borrowers' finances to enter confidently into an agreement to lend them money.  In light of these facts as alleged by Defendant, "it is clear that [Defendant] had sufficient resources at its disposal to detect any existing liabilities [P]laintiff[] had not disclosed."  *See Vasquez-Lopez*, 210 Or. App. at 581. Thus, Defendant has not established it had the right to rely on the representations of Plaintiff or BY&S as to Borrowers' financial condition before entering into Loans 4A and 5. Accordingly, the Court concludes Defendant has not sufficiently

pled the elements of a Counterclaim for fraud.

In summary, the pleadings reflect Plaintiff and Defendant were businesses engaged in an arm's-length relationship, and Defendant has not alleged facts from which the Court can conclude Defendant has sufficiently pled the right to rely on Plaintiff's statements.

Accordingly, the Court grants Plaintiff's Motion to Dismiss Defendant's Amended Counterclaim for fraud.

## CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's Motion (#40) to Dismiss HNC Properties, LLC's Amended Counterclaims.

IT IS SO ORDERED.

DATED this 6th day of November, 2014.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER